**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Patrick L. Booker,  ) | Case No. 8:24-cv-03859-DCC-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Henry McMaster, ) | |
| Governor of South Carolina; ) | |
| Howard Knapp, Executive Director of ) | |
| S.C. State Election Commission; and ) | |
| Connie Moody, Director of ) | |
| Voter Registration and Elections ) | |
| for Greenwood County, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Patrick L. Booker ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this civil action challenging the constitutionality of certain voting practices from the most recent United States House of Representatives election for the 3rd Congressional District of South Carolina. (Dkt. No. 9.) In bringing this lawsuit, Plaintiff has filed a Motion for a Preliminary Injunction, which is now before the Court. (Dkt. No. 10). Under Local Civil Rule 73.02(B)(2) (D.S.C.), the undersigned is authorized to review this motion and submit findings and recommendations to the assigned United States District Judge. For the reasons discussed below, the undersigned recommends that Plaintiff's motion be denied.

By way of background, the instant case is premised on the contention that over five thousand votes from certain Greenwood County polling places "were cast in direct violation" of voters' state and federal constitutional rights during the 3rd Congressional District race in June 2024. (Dkt. No. 9 at 3–4.) More specifically, Plaintiff claims that these polling places primarily violated (1) the South Carolina Constitution's "secrecy of the ballot" provision by allowing

cameras to record "directly above the voting booths," and (2) the Free Speech Clause of the First Amendment by prohibiting voters from "taking pictures of their ballots." (*Id.* at 3.) Plaintiff now "moves this Court for a preliminary injunction requiring the United States Secret Service to provide him with 24-hour protection throughout the pendency of this litigation," as he is challenging "the election results of a hotly contested congressional race" and is therefore "entitled to governmental protection against any lawless violence that may result from this historic and unprecedented legal action." (Dkt. No. 10 at 1.)

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Collins v. Bernedette*, No. 2:22-cv-1391-RMG, 2022 WL 16951738, at *1 (D.S.C. Nov. 15, 2022) ("A preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.") (internal citations and quotation marks omitted). Thus, such relief should issue only when the movant has established all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (noting that "*Winter* made clear that each of these four factors must be satisfied to obtain preliminary injunctive relief").

With respect to the first element, Plaintiff claims that he "has a substantial likelihood of success on the merits of his claims" because they are "grounded in the historical context and systemic discrimination/voter intimidation inherent in the ban on ballot selfies and the presence of surveillance cameras directly above voting booths." (Dkt. No. 10 at 2.) While the Complaint does present a lengthy "thesis" on the consequences of Greenwood County's purported voting

practices—including certain "psychological pressures," a "chilling effect," and the "disproportionate impact" on "voters from minority communities" (Dkt. No. 9 at 7–12)—these arguments merely demonstrate a "serious question for litigation." *See Ruiz v. NationStar Mortg. LLC*, No. 8:17-cv-3434-PWG, 2018 WL 3975635, at *2 (D. Md. May 18, 2018) (explaining that a plaintiff cannot meet the "rigorous" standard under *Winter* by simply presenting "a mere grave or serious question for litigation," but rather, must show that he "will *likely succeed* on the merits") (emphasis in original) (internal citations and quotation marks omitted). Whether Plaintiff is likely to succeed on the merits of his claims remains unclear, especially considering that this Court has yet to address a "ballot selfie" prohibition. *See Allstate Ins. Co. v. Warns*, No. 1:11-cv-1846-CCB, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2012) (noting the "heavy burden" of showing "likelihood of success" where "the area of the law at issue is difficult and complicated and still developing") (internal citations and quotation marks omitted).

Nevertheless, even if Plaintiff could establish that he is likely to succeed on the merits of his claims here, the second element under *Winter* precludes any award of injunctive relief, as Plaintiff has failed to show that he is likely to suffer irreparable harm without it. Indeed, Plaintiff states that, "[a]s an unprecedented and unexpected presidential candidate challenging the results of an election for a federal office, [he] is likely to become a target for lawless violence from those who may perceive his legal action as a threat to the status quo." (Dkt. No. 10 at 3.) Plaintiff further contends that "[t]he government has a duty to protect [him] from violence while exercising his constitutional rights," referencing *In re Quarles and Butler*, 158 US 532, 536 (1895). (*Id.*)

At the outset, the undersigned finds Plaintiff's concerns of "lawless violence" stemming from his bringing this action wholly speculative and lacking in factual basis. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (noting that the required

"irreparable harm" must be "neither remote nor speculative, but actual and imminent"); *see also Neitzke v. Williams*, 490 U.S. 319, 324–25, 327–28 (1989) (stating that a claim based on a "meritless legal theory" or a "fantastic or delusional" factual scenario is subject to dismissal). In any event, the injunctive relief Plaintiff seeks to prevent the alleged harm is unavailable, as the Court cannot grant, nor is Plaintiff entitled to, 24-hour protection from the United States Secret Service. Contrary to Plaintiff's contentions, there is no blanket constitutional right to be protected from private crime or violence.[1] *See Williams v. Stone*, 836 F.2d 548 (4th Cir. 1987) (Table); *see also Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982). To that end, it is also worth noting that the Secret Service is primarily authorized to protect the President and Vice President (and their immediate family members), Former Presidents and Vice Presidents, and visiting heads of foreign states or foreign governments. 18 U.S.C. § 3056. Although the Secret Service is also authorized to protect "Major Presidential and Vice Presidential candidates," Plaintiff plainly does not fall within that category—to the extent he is sincerely suggesting that he is a current presidential candidate. *See Clegg v. U.S. Treasury Dep't*, 70 F.R.D. 486, 487–88 (D. Mass. 1976).

For these reasons, the undersigned finds that Plaintiff is unable to satisfy all four *Winter* factors and therefore **RECOMMENDS** that the Motion for Preliminary Injunction (Dkt. No. 10) seeking 24-hour protection from the United States Secret Service be **DENIED**.

**IT IS SO RECOMMENDED.**

August 30, 2024
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiff's reliance on *In re Quarles and Butler*, 158 US 532 (1895), is misguided, as the case reinforces an individual's right "to inform a marshal of the United States or his deputy" of violations of "the internal revenue laws of the United States." *Id.* at 537–38. The case does not, however, demand government and/or police protection any time an individual exercises a constitutional right.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).